ERIK BABCOCK (Cal. 172517)
LAW OFFICES OF ERIK BABCOCK
717 Washington St., 2d Floor
Oakland CA 94607
510.452.8400 t
510.452.8405 f
erik@babcocklawoffice.com

Attorney for Defendant
BENITO CANALES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. CR 11-CR-00355 EJD |
| Plaintiff, | **DEFENDANT BENITO CANALES' SENTENCING MEMORANDUM; MOTION FOR VARIANCE AND FOR DOWNWARD DEPARTURE** |
| v. | |
| BENITO CANALES, | |
| Defendant. | Date:   November 21, 2016<br>Time:   1:30 p.m.<br>Court:  Hon. Edward J. Davila |

**INTRODUCTION**

Benito Canales comes before this court for sentencing following his admission to participating in a RICO conspiracy as charged in Count One of the Second Superseding Indictment.

Mr. Canales respectfully requests that the court sentence him to a sentence of credit for time served. At first blush, this sentence may appear too lenient. However, after comparing it carefully with the sentences requested by the government and imposed by this Court on co-

1

defendants in this case, it is in fact a reasonable and appropriate disposition under the Guidelines and the 18 U.S.C. § 3553.

Most of the defendants in this case had already been convicted of and sentenced for the offense conduct that was later charged as overt acts in furtherance of the RICO conspiracy charged in this case. Also, most of the defendants were (and many still are) still serving their state court sentences when brought into federal custody.

As to those defendants who were still serving their state sentences, the government has consistently and repeatedly recommended that this Court impose sentences which require an additional 1 or 2 years of federal time after the conclusion of the state sentences.

For the sake of consistency among similarly situated defendants, the same standard should be followed for Mr. Canales. If it is, Mr. Canales has already served more than enough time to satisfy this standard.

Mr. Canales has been in continuous custody since July 10, 2011, first state and then federal. Mr. Canales finished his state sentence March 5, 2015 and will therefore have served just over 20 months in federal custody, in addition to all of his state custody time, based on the same conduct.

The conduct underlying both state and federal convictions occurred on July 10, 2011. That day, Mr. Canales and codefendants Fonseca and Mariscal and fellow SSP members committed an unarmed robbery of a man on the street near 13th and Mission in San Jose. Mr. Canales took the man's red baseball cap. Rafael Mariscal took the man's ipod. And Francisco Fonseca had the man lift his shirt to check what color of belt he was wearing to see if he was a Norteno. No physical violence was used by Mr. Canales or the others, and the man was not physically harmed in any way. He was also not verbally threatened. After taking his cap and

ipod, the three men then went to Fonseca's home, where they were arrested without incident a short time later by San Jose Police officers. This conduct was charged in state court first, then later as an overt act of the RICO conspiracy in this case (and the only criminal conduct charged as an overt act by Mr. Canales).

Mr. Canales and his two friends were charged and convicted in Santa Clara Superior Court with grand theft from a person. Mr. Canales received a sentence of 6 years imprisonment. He was picked up by the U.S. Marshal on a writ in 2014. Early the following year, both his state conviction and sentence were reduced pursuant to Prop 47--according to the PSR, Mr. Canales discharged from state custody on March 5, 2015, at which time he would presumably begun receiving credits toward the sentence yet to be imposed in this case.

As of his sentencing, Mr. Canales will have served more than 64 months of actual custody. With credits, this is the equivalent having served a federal sentence of approximately 74 months of federal imprisonment. The undersigned respectfully submits that the time Mr. Canales has already served in custody is already adequate and that any further custody would be more than is reasonably necessary to fulfill the statutory goals of sentencing under 18 U.S.C. § 3553.

I.    **MR. CANALES'S BACKGROUND AND CHARACTER**

Mr. Canales was born and mostly raised in San Jose. His family moved to and lived in Mexico for a few years while he was quite young. Almost all of his immediate family still live in San Jose, the one exception being his brother Miguel, who resides in Modesto. Once released, Mr. Canales is hoping to transfer his supervision to the Eastern District in order to get out of the SSP environment in San Jose. He plans to live with his brother Miguel once a transfer is authorized.

3

Mr. Canales did not do well in school and dropped out at an early age, around the 7th Grade. It was at that time that he started using drugs and became involved in gangs, eventually SSP. He began what would turn into a long series of run-ins with the law. Indeed, looking at his the PSR, it appears he may have spent more time in-custody than out-of-custody over the last 20 years.

By the time of the overt acts at issue, he was, as he admitted to Probation, using methamphetamine almost daily for many years, in addition to smoking marijuana.

Mr. Canales has finally learned his lesson and has committed himself to getting on the straight and narrow. He has taken the GED repeatedly while in custody (though he has yet to pass it because of his limited education). He has taken self help courses while in custody. And he is committed to removing all of his visible tattoos, which pose an obvious barrier to receiving gainful employment. He has a several areas of vocational interest that he hopes to receive training if he receives further federal custodial time. And perhaps most importantly, he has now been free of methamphetamine for over five years.

II.    **THE OFFENSE CONDUCT**

Mr. Canales has been an SSP member for a long time—honestly, since the 1990s. And admittedly, he has committed a large number of offenses during that period. However, with one possible exception, the offenses he personally committed were not particularly serious or violent. Rather, his rap sheet is filled with arrests for drug possession, possession of burglary tools, and possession of dangerous weapons that were not <u>firearms</u>. Most of his arrests were violations of parole for associating with known gang members.

And the actual overt acts in this case for which the government indicted Mr. Canales were, in the context of this case, very limited:   as described above, he committed an unarmed robbery of a baseball cap from a victim who was neither physically assaulted nor harmed.

III.   **THE PRESENTENCE REPORT**

Defendant has no legal or factual objections to the presentence report, except as argued below to the recommended sentence.

IV.   **MR. CANALES REQEUSTS A VARIANCE TO A SENTENCE OF CREDIT FOR TIME SERVED, WHICH IS CONSISTENT WITH THE SENTENCES IMPOSED ON OTHER DEFENDANTS IN THIS CASE, AND  WOULD MEET THE STATUTORY GOALS OF SENTENCING. IN ANY EVENT, HE REQEUSTS A DOWNWARD DEPARTURE TO ACCOUNT FOR HIS TIME IN STATE CUSTODY**

Mr. Canales respectfully requests a sentence of credit for time served.  This would be the equivalent of a 74 month federal sentence.  A careful balancing of the remaining § 3553(a) factors supports the recommended sentence.

A.   **Applicable Sentencing Law**

In sentencing Mr. Canales, this Court must consider *all* of the directives set forth in 18 U.S.C. § 3553(a); the sentencing guidelines are only one factor among many to be considered by the Court. *See United States v. Booker*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007).   "The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary" to achieve the statutory goals of sentencing set forth in 18 U.S.C. § 3553(a).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).

The statutory goals include the need to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional

treatment in the most effective manner.  *See* 18 U.S.C. § 3553(a)(2).  Section 3553(a) also directs the court to consider a number of additional factors, including the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, § 3553(a)(1); the kinds of sentences available, § 3553(a)(3); the sentencing guideline range, § 3553(a)(4); and, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6).

**B.      The Nature and Circumstances of the Offense and the Need To Avoid Unwarranted Sentencing Disparity Support A Sentence of  Credit  for  Time Served**

In this case, one of the statutory factors is of particular import:  "the need to avoid unwarranted sentence disparities" under § 3553(a)(6).  This factor gives this court a significant reason to impose a sentence at variance with the Guidelines.

Every defendant in this case who pleaded guilty to Count One has been sentenced under the same sentencing Guidelines that is set forth in the PSR here.  Therefore, Mr. Canales has the same offense level under the Guidelines (a Level 28) as the defendants who were convicted of much more serious conduct.

The only other defendants already sentenced on Count One are Moreno, Montoya, Rodriguez and Lomelli.  Each of these defendants committed much more serious crimes that Mr. Canales.  For example:

- Defendant Moreno shot a firearm at a rival gang member, and admitted to successfully shooting at two other suspected rival gang members.  Gov. Sent. Memo, Dkt # 594, at p.2.

- Defendant Montoya was involved in a stabbing at Elmwood in attempting to kill a suspected snitch. Gov. Sent. Memo, Dkt # 543, at p.2.

·    Defendant Rodriguez also was involved in the attempted murder by stabbing of a suspected snitch at Elmwood. Gov. Sent. Memo, Dkt # 494,

·    Defendant Lomelli was involved in an armed robbery in which he held the victim at knifepoint and threatened to kill him.  He also possessed a gun on at least one other occasion.  Indictment, ¶ 22J; Def. Sent. Memo, Dkt # 617.

Clearly, not every defendant named in Count One is equally culpable, even if they are all of convicted of the same charged conspiracy and have the same offense level under the Guidelines. The charged RICO conspiracy encompasses a wide variety of criminal misconduct, everything from possession of drugs to knifing, shooting and murder.

In the overall scheme of the charged conspiracy, Mr. Canales was a minor player--the actual criminal conduct that he personally committed is towards the minor end of the crimes in the charged conspiracy--he committed an unarmed robbery of a baseball cap in which the victim was not hurt, or even actually threatened.

But Mr. Canales is being sentenced under the same offense level (Level 28) as those defendants who actually tried to kill other people.

A variance is clearly warranted.

Despite this discrepancy, which is caused by the application of the exact same Guideline to very different crimes, the Probation Department and government counsel have made no effort to take into account the differences in culpability between the defendants when making sentencing recommendations.  Although Probation recommends a downward departure, that departure is based on the global disposition and making sure that Mr. Canales receives credit for

the time that he served in state custody.  All defendants who pleaded guilty are getting that same recommendation.

The Probation Department and government counsel recommend a federal sentence of 8 years (96 months).   This sentence is to be just federal time, not concurrent with any state time (since Mr. Canales is no longer in state custody).  When taken in conjunction with the time Mr. Canales has spent in state custody, the government is ultimately recommending a combined total state and federal sentence of 140 months (44 months state prison plus 96 months in federal prison).[1]

In terms of disparity and fairness, this recommendation is difficult to square with the sentences imposed on the other defendants convicted of Count One in this case.  A sentence of 140 months for an unarmed robbery of a baseball cap with no weapon or actual violence should be treated significantly less seriously than a shooting at a suspected rival, or a stabbing of someone suspected of snitching.   In this case, Moreno received a total combined sentence of 160 months for shooting at a suspected rival, only 20 more months than the sentence recommended here.   And for their involvement in stabbing a suspected snitch, Montoya received a total state/federal sentence of 192 months, and Rodriguez a sentence of 240 months.[2]

Significantly, in each of the above cases,[3] the government agreed to overall combined state and federal sentences that imposed merely incremental consecutive federal punishment on

---

[1]   Mr. Canales would presumably receive credits toward this sentence starting in March, 2015, the date at which the Probation Department believes he was released from custody by the state. At that point he had spent 44 months in state custody.

[2]   The information herein about the sentences of the other defendants is based solely on the undersigned counsel's review of the sentencing memoranda filed by government and defense counsel, as the codefendants' PSRs are confidential.

[3]   Mr. Lomelli received a total sentence of 20 years--a sentence of 15 years in state court followed by a consecutive 5 in federal prison since he was convicted under section 924(c).  The defense and government sentencing memoranda are relatively sparse as to the underlying facts

top of the previously imposed state sentences.  For example, as to both Montoya and Rodriguez, the government requested only an additional 2 years of federal imprisonment on top of the state sentences.[4]

That same formula of incremental punishment should be applied in this case.  Mr. Canales should receive merely incremental punishment beyond what he received in state court, just as Montoya and Rodriguez.  It makes no logical sense to give him more federal time than more culpable defendants.   If this method were employed, Mr. Canales would already have served both of his state and federal sentences.  Mr. Canales has been in custody now continuously since July 10, 2011 when he was arrested for the robbery discussed herein.  He has now served a total of more than 64 months in actual custody, which is the equivalent (with credits) of serving a 74 month term of imprisonment in federal prison.

Mr. Canales was originally sentenced in state court to a term of 6 years (served at 80% time) for a felony grand theft.  However, after Proposition 47 passed he sought resentencing and on February 23, 2015 his conviction was reduced to a misdemeanor grand theft.  He was then resentenced to a term of 6 months in county jail.  Although it was theoretically a 6 month sentence, at that point he had been in state custody for 44 months, so effectively Mr. Canales served a state sentence of 44 months. Starting March 6, 2015, all of Mr. Canales' custody time was solely federal time.

---

so the undersigned was not able to determine the factual basis for his culpability beyond the charges, but the state court and this court clearly deemed his culpability to be significant.

[4]    The undersigned was not able to determine from the docket what type of state sentence Mr. Moreno received in relation to his federal sentence.

9

Mr. Canales has now served an additional 20 months beyond his 44 months in state custody.  This 20 months of consecutive federal time is more than adequate incremental federal punishment given his relative culpability when defendants who stabbed and shot people were only given 24 months of incremental federal time.

Another way of looking at the unfairness of the proposed sentence in this case is by comparing the sentence proposed by the government with the sentence Mr. Canales would have received if he had actually been convicted of robbery, not a RICO conspiracy.  If convicted of robbery, his offense level would have been calculated under § 2B3.1.  The base offense level for an unarmed robbery is Level 20 under §  2B3.1(a).  Since no weapon was used, the victim was neither harmed nor threatened, and the property taken was not of great value, no further upward adjustments would apply.  After 3 points for acceptance and 2 levels of for the global disposition, Mr. Canales' final offense level would have been Level 15.  Even at a Criminal History Category of VI, the sentencing range for a level 15 is between 41 and 51 months imprisonment.   Given credit for the time he served in state custody for the exact same crime, Mr. Canales would already have served more than enough time because he has been in custody for 64 months.

All of this illustrates the unfairness of imposing a "Guideline" sentence on Mr. Canales when the "Guideline" being used is exactly the same Guideline used to sentence much more culpable defendants.

### C. Defendant Requests The Court Downwardly Depart to Give Him Appropriate Credit for Time in State Custody Under § 5K2.23

The Probation Officer has recommended, and defendant moves for, a downward departure account for the 44 months Mr. Canales spent in state custody for the same robbery charged as an overt act in this case.

### D. Mr. Canales Personal Characteristics And History Support A Sentence of Credit for Time Served

Mr. Canales has a long and unflattering history with law enforcement that began when dropped out of school and started hanging out with SSP members when he was 12 years old. He recognizes that his history puts him in a poor position to ask for leniency.

But the truth is that Mr. Canales has now reached his early 30s, and after spending the last 5 years in jail and prison (his longest sentence in state court was 2 years imprisonment) he believes he is finally ready to make real and significant changes in his life.

He has now been clean and sober for 5 years. This is significant issue for him personally because he has been using and abusing methamphetamine for 20 years (and has never received treatment for his abuse).

He has been housed separately from the other Surenos at Santa Clara Main Jail.

He has taken every available program at the jail. He has Certificates of Participation in the H.E.R.O.E.S. program, as well as the 3R's: Re-Educate, Rehabilitate, Recovery. He has also been studying for and has taken the G.E.D. on multiple occasions, but has not yet been able to pass it. He hopes to receive vocational training, as set forth in the PSR. And he is ready to remove the tattoos from his face so that he can realistically try and find employment.

///

///

///

///

///

///

///

11

**CONCLUSION**

A variance is not just appropriate but necessary to ensure that Mr. Canales does not serve more years in federal prison than are warranted by the crime he actually committed in this case. Mr. Canales was certainly a long-standing member of SSP, but all SSP members were not equally criminal or culpable.

The 140 month combined state and federal sentence proposed by the government is simply too much for an unarmed robbery, even for someone like Mr. Canales with a long and checkered past. He has already served the equivalent of a 74 month federal sentence. That would be a reasonable sentence for this crime and this offender. In the language of the statute, it would be "sufficient but not greater than necessary" to achieve the statutory goals of sentencing.

For all the reasons set forth above, Benito Canales respectfully requests that the court impose a sentence of credit for time served.

DATED: 11/15/2016

Respectfully submitted,


By:     /s/Erik Babcock
ERIK BABCOCK
Attorney for Benito Canales